**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0858-24
     A-0860-24

IN THE MATTER OF THE
ESTATE OF FRANK D. CARONE,
deceased.

_____

IN THE MATTER OF THE
ESTATE OF ROSEANN CARONE,
deceased.

_____

   Argued September 18, 2025 – Decided September 25, 2025

   Before Judges Mawla and Marczyk.

   On appeal from the Superior Court of New Jersey,
   Chancery Division, Passaic County, Docket Nos.
   P228307 and P227937.

   Paul R. Marino argued the cause for appellants Anton
   Mayer, Jr., and Francisco Mayer (Day Pitney, LLP,
   attorneys; Paul R. Marino and Michael L. Fialkoff, of
   counsel and on the briefs).

   Adam K. Derman argued the cause for respondents
   Anton Mayer and Genoveffa Mayer (Chiesa Shahinian
   & Giantomasi, PC, attorneys; Adam K. Derman and
   Brigitte M. Gladis, on the briefs).

PER CURIAM

In these back-to-back appeals, plaintiffs Anton Mayer Jr. and Francisco Mayer appeal from an October 15, 2024 order dismissing their challenge to the last will and testament of decedents Frank and Roseann Carone for lack of standing. We affirm.

Frank[1] and Roseann passed away in August and June 2022, respectively. Jeanie and Anton Mayer, Sr. are their daughter and son-in-law. Anton Jr. and Francisco are Jeanie's and Anton Sr.'s sons and decedents' grandsons.

On January 31, 2006, decedents executed reciprocal wills in which plaintiffs were named as beneficiaries. With the help of a new attorney, Michael Zimmerman, they drafted several more wills in 2007, 2011, 2013, 2014, 2015, and 2017. Plaintiffs were named as beneficiaries in the 2007 and 2011 wills.

In 2015, Anton Jr. became estranged from the family, including his sister, parents, and decedents over a scheduling dispute regarding his wedding and his sister's wedding. As a result, neither his parents, nor decedents, were invited to his wedding. Decedents were greatly upset by Anton Jr.'s conduct and Roseann

---

[1] Intending no disrespect, we use first names because many of the parties share the same surnames.

A-0858-24

asked Zimmerman whether she and Frank could rescind stocks they had gifted Anton Jr.

In 2019, Francisco's relationship with his parents and sister deteriorated because of his efforts to reconnect with Anton Jr. Francisco was residing in an apartment owned by Frank, which he vacated without providing notice. Decedents expressed their displeasure regarding Francisco's move and his poor relationship with them on several occasions to a few family friends. On June 10, 2019, they asked Zimmerman to draft new wills, disinheriting Francisco.

A family friend recounted decedents were "very adamant" about wanting plaintiffs out of their wills to prevent their wives from "get[ting] any of their money." In September 2019, Zimmerman sent decedents a copy of the prepared draft will with a cover letter explaining its key provisions, including one that excluded Anton Jr. and Francisco as beneficiaries. These wills were not signed by decedents until 2021.

In the two years between the drafting and signing of the will, Roseann made comments to Francisco's wife, indicating it was not her desire to disinherit plaintiffs. Roseann also told Anton Jr.'s wife that Jeanie had informed Roseann that she did not need to provide for her great-grandchildren in her will because Anton Jr.'s in-laws would be bequeathing enough to them in their will.

3

A-0858-24

In October 2021, Frank suffered a heart attack. On November 1, 2021, in response to a request from Roseann, Zimmerman re-sent copies of the 2019 draft will to decedents for their review.

On December 22, 2021, Anton Sr. drove decedents to Zimmerman's office in New York City to sign their wills. This appointment occurred during the COVID-19 pandemic and decedents did not want to enter Zimmerman's office. So, he and his secretary came to their car to execute the wills. Zimmerman entered the car with decedents and Anton Sr., while his secretary remained outside with the windows rolled down. The 2021 wills contained a provision revoking "all prior wills and codicils," and stated: "It is my specific intention that no portion of my estate shall pass . . . to my grandson, FRANCISCO MAYER, . . . or to my grandson, ANTON MAYER JR., . . . and all provisions in this [w]ill shall be interpreted in accordance with my intent as expressed herein."

In March 2022, Zimmerman advised decedents to turn their 2021 will into a pour-over will with a revocable trust, following the same terms as the 2021 will. They agreed. However, before the 2022 draft will was executed, Roseann passed away in June 2022.

4

Following Roseann's death, Zimmerman assisted Frank with the probate process. On August 4, 2022, Frank executed the draft pour-over will and revocable trust, which followed the same provisions as the 2021 will. The will was signed in Frank's home, with Anton Sr. and Jeanie present. Frank passed away on August 14, 2022.

On August 19, 2022, Anton Jr. texted Francisco: "The fact that Zimmerman sent [decedents] an [e]-mail asking if they want to sign two years after he drafted a revision should show that there is undue influence somewhere and a conflict of interest being he also wrote [Anton Sr. and Jeanie]'s will around the same time." Francisco responded that he should "tell this all to the lawyers."

On January 6, and February 6, 2023, plaintiffs filed complaints to invalidate Frank's 2022 will and Roseann's 2021 will, respectively. The complaint against Frank's estate contained counts for undue influence, lack of capacity, and forgery. Plaintiffs claimed Frank's will was "contrary to numerous statements" he made stating they would inherit a "significant portion" of his estate. They claimed a prior version of the will showed they would each receive ten percent of his estate. The complaint detailed claims about Jeanie and Anton Sr.'s efforts to ostracize and disinherit plaintiffs, and on the other hand, decedents' loving relationship with plaintiffs.

A-0858-24

The complaint against Roseann's estate contained one count for undue influence. It alleged similar claims about plaintiffs' loving relationship with her and Frank, Roseann's intent that plaintiffs inherit, and Anton Sr.'s attempts to ostracize and prevent plaintiffs from inheriting.

Both estates moved to dismiss the complaints, arguing plaintiffs lacked standing as they are decedents' grandchildren and would not inherit under the intestacy statutes, should the wills be invalidated. The court granted discovery limited to the standing issue.

All of decedents' wills were produced in discovery. Discovery yielded a copy of a 2006 will drafted by a different, now deceased, attorney, in which plaintiffs were listed as beneficiaries. Following discovery, the estates again moved to dismiss for lack of standing. At the motion argument, the court observed plaintiffs were included as beneficiaries in every will until 2015, which "bears out what the allegations of the complaint are." It concluded plaintiffs had standing to pursue those claims and entered an order denying the motion on June 8, 2023.

The estates later moved for summary judgment on grounds the subsequent wills executed by decedents revoked the 2006 will, which plaintiffs asserted should be probated. Even if the 2021 and 2022 wills were invalidated, the

A-0858-24

estates argued the court could not grant plaintiffs any relief due to the lack of standing. The court denied the motion and scheduled the matter for trial.

At a hearing to address trial logistics, the parties disputed which issues should be tried. Plaintiffs reiterated they sought to probate the 2006 will. Notwithstanding that will, they argued Anton Jr. was a beneficiary of every will until 2015, and Francisco was a beneficiary until the 2021 and 2022 wills. Plaintiffs asserted the trial was about more than standing, and they should be able to pursue their claims of undue influence. The estates reiterated that plaintiffs wanted the court to probate the 2006 will. Therefore, the trial was limited to whether that will had been revoked by subsequent wills, and if this was the case, plaintiffs lacked standing, and judgment should be entered in favor of the estates. The court agreed and observed that "because [plaintiffs'] position is that the 2006 will is the will that can be probated[, they could not] . . . change that at trial and basically throw it at the wall and figure out which" will could be probated in place of the 2021 and 2022 wills.

At a pre-trial conference, plaintiffs again asserted they had standing under other wills in addition to the 2006 will. They claimed N.J.S.A. 3B:3-3 does not require a signed will and instead only a writing that the testators intended to serve as their wills. Therefore, the trial should also cover the unsigned wills

A-0858-24

after the 2006 will because they manifested decedents' intent that plaintiffs inherit, and the fact they were not signed was evidence of undue influence. The estates reiterated the court had already ruled the sole trial issue was the 2006 will and whether plaintiffs had standing.

The court held the trial would be limited to the 2006 will because plaintiffs could not "take a position that there's only one [w]ill that [they are] seeking to have probated and then come back and say well, let's try all of them." Estoppel barred plaintiffs from arguing the wills other than the 2006 will gave them standing.

Zimmerman was the sole trial witness. Prior to his testimony, plaintiffs argued in their opening that the 2006 will "matched exactly what Frank and Roseann . . . had told their grandkids, [namely,] they would each get [ten] percent of their . . . estate under that [w]ill." Plaintiffs argued the court should not accept Zimmerman's forthcoming testimony that subsequent unsigned wills, which were produced from his files, were in fact signed by decedents. They claimed his testimony was "tainted by his own self-interest and . . . his allegiance to people other than [decedents]."

Zimmerman testified about his more than four decades of experience as a tax, wills, trusts and estates attorney. He first met with decedents to plan their

A-0858-24

estate in 2007. Zimmerman recounted his longstanding relationship with decedents and the counseling he provided in drafting their various wills between 2007 and 2022. His work included drafting eight wills, living trusts, health care proxies, and performing tax work for Frank over the years. Zimmerman testified the number of wills decedents asked him to draft was highly unusual. He explained decedents "would have issues with the family and . . . would change percentages[;] . . . they would continually . . . just change their minds as to who they wanted to give [to]."

Zimmerman had limited interaction with Anton Sr. and no contact with Jeanie. He testified that others were not involved in the estate planning because "Frank was private and . . . didn't include anybody else."

Zimmerman recounted the process of preparing the 2007 estate documents for decedents. Both decedents signed the documents at the same time. The wills he prepared for them contained an express provision that revoked all prior wills and codicils. He noted decedents would not have had him prepare the 2007 documents if they did not intend to revoke their prior will. Whenever they signed a new will, he would destroy the prior one.

Decedents had Zimmerman prepare a charitable foundation in connection with their 2007 wills. Zimmerman incorporated the foundation; registered the

A-0858-24

foundation with the IRS as a tax exempt organization; and resigned and appointed Frank as the president and director of the foundation, Roseann as its vice-president, and Jeanie as secretary and director. He also filed tax returns for the foundation. Zimmerman explained this was further proof of the existence of decedents' 2007 wills. In other words, "there would be no reason to create a foundation if it wasn't the [w]ill that created [the] charitable trust."

Zimmerman saw both decedents sign the 2007 will on December 20, 2007. All the estate documents were signed together that day and in front of three witnesses. He had no doubt the 2007 wills were signed, revoking all prior wills.

Zimmerman also explained why decedents had signed wills in 2011, 2013, 2014, 2015, and 2017. The evidence of the 2011 wills included a transmittal letter forwarding a copy of the wills decedents had signed in Zimmerman's office and notes from a month prior about a conversation he had with decedents regarding their wills. Zimmerman also had an invoice for the work he had done for decedents, which showed they signed the wills on September 22, 2011. The 2011 wills contained the same provision revoking all prior wills, and Zimmerman had no doubt decedents had signed them.

Zimmerman testified similarly about a 2013 invoice, which showed decedents had signed new wills on June 11, 2013. These wills primarily made

A-0858-24

changes to the charitable trust established under the 2007 wills.  He explained he would not have invoiced decedents if the 2013 wills had not been prepared and executed.  There was no doubt the 2013 wills were executed because decedents signed them in his presence and paid the bill.

On October 22, 2014, Zimmerman billed decedents for revisions to their wills and trusts.  Roseann executed her will on October 21, 2014.  It contained a provision revoking all prior wills and codicils.  According to Zimmerman, Frank did likewise because they always executed their wills together.

Decedents also signed new wills in 2015.  Zimmerman produced notes dated July 27, 2015, which reflected decedents called him to remove Anton Jr. from the will.  The wills contained the same revocation provisions.  Decedents ultimately executed the new wills on November 19, 2015, and Zimmerman invoiced them on January 11, 2016.  He described that the execution occurred in one of decedents' businesses.

Zimmerman billed decedents on August 28, 2017, for the drafting and execution of their 2017 wills.  The wills were signed on August 8, 2017.  Zimmerman witnessed the signing, along with his secretary and his son, who also worked with him.

11

On cross-examination, Zimmerman was confronted by the fact he did not produce Frank's 2007 will and whether this showed that it was possible that Frank did not execute a will. Zimmerman said it was impossible because decedents always signed their wills together and never separately. Every will he prepared for decedents was signed in front of him and witnesses.

On re-direct, Zimmerman explained the 2019 will was not signed until 2021 due to the outbreak of the COVID-19 pandemic. The 2022 will did not have dispositive provisions in it and instead created a pour-over trust.

At the conclusion of Zimmerman's testimony, plaintiffs moved for a directed verdict. They argued the court had to decide whether decedents executed wills in 2007, 2011, 2013, 2015, or 2017. Plaintiffs asserted Zimmerman's testimony was not credible because it differed from his deposition testimony. His invoices and testimony about his interactions with decedents was insufficient to prove decedents signed the wills prepared for them over the years. The wills contained mistakes, which evidenced they were not the final versions. Additionally, Zimmerman was biased in favor of Anton Sr. and Jeanie.

The estates argued Zimmerman's testimony was extensive and drew upon computer records, invoices, notes, transmittal letters, and "other contemporaneous records," which showed the wills were signed and contained

12

revocation provisions. They alleged it was not believable that the healthcare proxies, durable powers of attorney, and charitable foundation instruments prepared in 2007 would exist without a will to accompany them. Zimmerman was credible because he would never perform the work and invoice for it if decedents had not signed their wills. Pursuant to N.J.S.A. 3B:3-13, the 2006 wills were revoked by the subsequent wills and the evidence presented of "the performance of a revocatory act on the [w]ill." Therefore, plaintiffs' complaints should be dismissed for lack of standing.

The court found the 2007 documents, namely the: will; living trust; healthcare proxy; power of attorney for healthcare; power of attorney; charitable lead trust; and the resignation letter following the incorporation of the charitable trust, dispositive of Zimmerman's credibility, and the fact defendants executed wills revoking the 2006 wills. The 2011 letter forwarding the wills to decedents and Zimmerman's notes of his meeting with them was also evidence of a 2011 will. The court denied plaintiffs' motion for a directed verdict.

Plaintiffs then moved for reconsideration of the court's June 8, 2023 ruling on standing. They argued if the court was crediting Zimmerman's testimony, then the 2007 will clearly benefitted them. Estoppel did not apply because the

A-0858-24

estates had not relied to their detriment on any representation made by plaintiffs during the litigation. Rather, Zimmerman had changed his testimony.

The court rejected plaintiffs' arguments and found "Zimmerman was quite clear that the reason . . . he testified differently at the deposition is that he didn't have the benefit of the other documents." He testified credibly he was present and saw the 2007 wills being executed. The court ruled it would not discredit his testimony for being "inconsistent with what he testified to at his deposition when he didn't have the benefit of other documents to refresh his recollection of what actually happened at that [w]ill execution."

The court denied the reconsideration motion and concluded plaintiffs lacked standing. It subsequently entered the order dismissing plaintiffs' complaints.

I.

Our review of a judgment following a bench trial is very limited and deferential. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). We "must accept the factual findings of" the trial judge, when such findings "are 'supported by sufficient credible evidence in the record.'" State v. Mohammed, 226 N.J. 71, 88 (2016) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). Findings made by a judge "should not be disturbed unless 'they are so wholly

insupportable as to result in a denial of justice . . . .'" Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974) (quoting Greenfield v. Dusseault, 60 N.J. Super. 436, 444 (App. Div. 1960)).

"Deference is particularly appropriate when the court's findings depend on credibility evaluations made after a full opportunity to observe witnesses testify, Cesare v. Cesare, 154 N.J. 394, 412 (1998), and the court's 'feel of the case.'" Accounteks.Net, Inc. v. CKR L., LLP, 475 N.J. Super. 493, 503 (App. Div. 2023) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "In reviewing the judge's findings, '[w]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence.'" 160 W. Bdwy. Assocs., LP v. 1 Mem'l Drive, LLC, 466 N.J. Super. 600, 610 (App. Div. 2021) (alteration in original) (quoting Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008)). "However, we owe no deference to the judge's interpretation of the law and the legal consequences that flow from established facts." Ibid. (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

II.

Plaintiffs assert they have standing to contest decedents' wills because the 2011 wills can be probated. Under N.J.S.A. 3B:3-2, a will that does not comply

15

A-0858-24

with all required formalities can still be entered into probate if it can be shown by clear and convincing evidence that decedents reviewed the document and assented to it. The 2011 wills met these criterion because Zimmerman testified he reviewed it with decedents, they assented to it, he charged them for his work, and forwarded the signed wills to decedents for their records.

Plaintiffs claim the trial court abused its discretion when it ruled they lacked standing under any wills other than the 2006 wills. They reiterate equitable estoppel did not apply because the estates did not produce any evidence of a detrimental reliance on plaintiffs' representations to limit the trial to the 2006 wills. The court failed to explain why it would be unfair to allow the undue influence claim to proceed. Its ruling immunizes the estates from an important claim and prevents the court from ascertaining decedents' intentions.

Plaintiffs argue judicial estoppel did not apply because there was no evidence they asserted inconsistent positions. Their pivot from the 2006 wills to the 2011 wills was an alternative argument asserted only after the court found the 2007 and 2011 wills were signed. We address these arguments in turn.

A.

A party has standing if they can establish "a sufficient stake and real adverseness with respect to the subject matter of the litigation [and a] substantial

A-0858-24

likelihood of some harm . . . in the event of an unfavorable decision . . . ." Jen Elec., Inc. v. Cnty. of Essex, 197 N.J. 627, 645 (2009) (alteration in original) (citation omitted). Our courts have traditionally taken "a generous view of standing," In re New Jersey State Contract A71188, 422 N.J. Super. 275, 289 (App. Div. 2011), and "[a] litigant with a financial interest in the outcome of the litigation will ordinarily have standing." Courier-Post Newspaper v. Cnty. of Camden, 413 N.J. Super. 372, 381 (App. Div. 2010) (citing Marshall v. Raritan Valley Disposal, 398 N.J. Super. 168, 176 (2008)).

In a will contest, standing requires that the contesting party be injured or "aggrieved" by the probate of the will they seek to challenge. R. 4:85-1; In re Prob. of Alleged Will and Alleged Codicil of Myers, 20 N.J. 228 (1955). "An individual who would be injured by the will is one who would be pecuniarily prejudiced by it." In re Prob. of Alleged Will of Hughes, 244 N.J. Super. 322, 325-26 (App. Div. 1990).

We reject plaintiffs' claims the trial court should have considered the entire gamut of wills decedents had prepared over the years. Our review of the record convinces us plaintiffs' claims at trial rested on the validity of the 2006 and 2011 wills, which they asserted had not been properly revoked. In this regard, the court correctly found plaintiffs lacked standing. Zimmerman

17

testified there were at least two other wills, executed in 2015 and 2017, which revoked the 2006 and 2011 wills and extinguished plaintiffs' claims.

B.[2]

The doctrine of equitable estoppel is "'founded in the fundamental duty of fair dealing imposed by law.' [It] is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to [their] detriment. . . ." Tasca v. Bd. of Trs., Police & Firemen's Ret. Sys., 458 N.J. Super. 47, 59 (App. Div. 2019) (quoting Knorr v. Smeal, 178 N.J. 169, 178 (2003)).

Plaintiffs' argument the application of the doctrine here was unjust or unfair is unpersuasive. As we noted, during the pre-trial conference, the court recounted that up until that point, plaintiffs had based their entire claim on the 2006 will, including in their complaints, discovery, and responses to defendants' motion to dismiss. Then, less than a month before trial and after the conclusion of discovery, plaintiffs argued their claim was predicated on the 2011 will. These facts convince us the court neither abused its discretion nor misapplied

---

[2] As noted in the preceding section, the evidence in the record readily supports the conclusion the 2011 wills were revoked. We addressed the 2011 wills for sake of completeness. It does not detract from our conclusion in this section that equitable and judicial estoppel were properly employed to limit the dispute to the 2006 wills.

A-0858-24

the law. If anything, the invocation of estoppel in plaintiffs' favor would be unfair to the estates.

We reach a similar conclusion regarding plaintiffs' judicial estoppel argument. "Judicial estoppel is an extraordinary remedy . . . [and] should be invoked only to prevent a miscarriage of justice." Bhagat v. Bhagat, 217 N.J. 22, 37 (2014) (citations omitted). Under this doctrine, "[a] party who advances a position in earlier litigation that is accepted and permits the party to prevail in that litigation is barred from advocating a contrary position in subsequent litigation to the prejudice of the adverse party." Id. at 36 (citation omitted). "The purpose of the . . . doctrine is to protect 'the integrity of the judicial process.'" Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606 (App. Div. 2000) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 387 (App. Div. 1996)). "If a court has based a final decision, even in part, on a party's assertion, that same party is thereafter precluded from asserting a contradictory position." Cummings, 295 N.J. Super. at 387-88.

Judicial estoppel was appropriately applied here. There is no credible argument that the claims, motion practice, and discovery preceding the trial revolved around anything other than whether the 2006 will controlled.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

19